IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| AMBER OCTAVIA JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:10cv47-WC |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

## I.   INTRODUCTION

Plaintiff Amber Octavia Jones applied for child's insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act (Act), 42 U.S.C. §§ 401-433, 1381-1383c (Tr. 137-43). Her applications were denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge (ALJ). Following the hearing, the ALJ issued a decision in which he found Plaintiff not disabled from the alleged onset date through the date of the decision. The Appeals Council rejected Plaintiff's request for review of the ALJ's decision. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is

---

[1]     Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

now before the Court for review under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge.  Pl.'s Consent to Jurisdiction (Doc. #9); Def.'s Consent to Jurisdiction (Doc. #10).  Based on the Court's review of the record and the briefs of the parties, the Court REVERSES the decision of the Commissioner.

## II.    STANDARD OF REVIEW

Pursuant to the Act, a person may be entitled to "child's insurance benefits" if they are eighteen years old or older and have a disability that began before the age of twenty-two. 20 C.F.R. § 404.350(a)(5).  Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of Impairments]

---

[2]      A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational

---

[3]        *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4]        *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

expert (VE).  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual.  *Phillips*, 357 F.3d at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

The Court's review of the Commissioner's decision is a limited one.  This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  *See also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.").  A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings.  . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions,

4

including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was twenty-one years old at the time of the hearing before the ALJ.  Tr. 11. Plaintiff completed the eleventh grade.  Tr. 250.  Plaintiff had no past relevant work experience. Tr. 16.  Following the administrative hearing, and employing the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date (Step 1).  Tr. 11.  At Step 2, the ALJ found that Plaintiff suffers from the following severe impairments: "depression and borderline intellectual functioning." *Id*.  The ALJ then found that "the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments . . ." (Step 3).  Tr. 12.  Next, the ALJ found that Plaintiff retained the residual functional capacity to perform a full range of unskilled work at all exertional levels that did not involve more than short, simple instructions.  Tr. 14.  The ALJ next found that, given Plaintiff's RFC for the full range of unskilled work at all exertional levels, she "has not been under a disability as defined in the Social Security Act," since the onset date.  Tr.17.  Nevertheless, the ALJ also consulted with a vocational expert, who testified that Plaintiff can perform unskilled occupations, including "housekeeper," "laundry sorter," and "café attendant." *Id.* Accordingly, the ALJ determined that Plaintiff was not disabled. *Id*.

## IV.   PLAINTIFF'S CLAIMS

Plaintiff presents three issues for this Court's consideration in review of the ALJ's decision: (1) "[w]hether the ALJ erred by failing to properly consider the opinion of Dr. Allen"; (2) "[w]hether the ALJ failed to properly evaluate [Plaintiff's] hearing loss"; and (3) "[w]hether the ALJ erred as a matter of law by failing to properly evaluate [Plaintiff's] mental retardation as a listed impairment pursuant to 20 C.F.R. part 404, Subpart P, Appendix 1 § 12.05C." Pl.'s Brief (Doc. #14) at 1. Because the court finds the appropriate action in this matter is to remand to the Commissioner with instructions to properly develop the record with regard to Plaintiff's claim for mental retardation, it declines to address Plaintiff's claim concerning hearing loss.

## V.   DISCUSSION

As a preliminary matter, the court notes that the Commissioner concedes that this "was a close case on the ultimate issue of disability." Def.'s Brief (Doc. #15) at 9. The court agrees, which highlights the importance of the ALJ's duty to properly develop the record during the administrative proceedings. For some reason not apparent to this court, the ALJ appeared particularly opposed to the development of the record in this case.[5]

As the Court of Appeals for the Eleventh Circuit has instructed, "[b]ecause a hearing

---

[5] *See, e.g.,* Transcript of Hearing Tr. 35-36 (the ALJ chided Plaintiff's attorney for "leading" during attorney's follow-up questioning of Plaintiff regarding information to which Plaintiff had already testified, attempted to limit attorney's questions regarding conditions diagnosed by the consultive examiner, and instructed attorney that she is "not going to create a condition for us").

before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir.1997).  Requiring such a record "ensures that the ALJ has fulfilled his duty . . . to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" and enables reviewing courts "to determine whether the ultimate decision on the merits is rational and supported by substantial evidence." *Welch v. Bowen*, 854 F.2d 436, 440 (11th Cir.1988).

In the present case, the ALJ found that Plaintiff had not met the requirements of section 12.05 of the Listing of Impairments because there was no valid test showing that Plaintiff had an IQ below 70 and she did not have deficits of adaptive functioning.  Tr. 12-14. This is troubling because the only IQ score the ALJ apparently considered was the full scale IQ score of 62, submitted by consultive examiner Dr. Dipeolu.  Tr. 304-305.  The ALJ determined that this was not a valid IQ score, because Dr. Dipeolu stated in his report that Plaintiff was "not considered to be functioning in this range given her performance on the WISC-III plus her current psychological condition."  Tr. 14 & 305.  Plaintiff's "current psychological condition" included "severe depression with psychotic features."  Tr. 305. However, the ALJ apparently disregarded Dr. Dipeolu's other statement that "[t]he chances that her true IQ score falls in the range from 59 to 69 are approximately 95 out of 100."  Tr. 304.  Thus, the ALJ relied on the portion of Dr. Dipeolu's report wherein he stated that the IQ score of 62 may not be reliable because of Plaintiff's functioning and severe depression with psychotic features, but failed to acknowledge his finding of a 95% chance that her IQ

score was between 59 and 69.

The Commissioner admits that "[t]he most crucial evidence in the case is Dr. Dipeolu's March 2007 consultative examination." Def.'s Brief (Doc. #15) at 9.  If that is the case, then certainly Dr. Dipeolu's determination that Plaintiff's true IQ lies somewhere between 59 and 69 should not have been ignored, especially when the ALJ stated that Plaintiff did not have a valid full scale IQ of less than 70 and used that in conjunction with her adaptive abilities to deny disability.  Tr. 14.

Even more concerning is the fact that there was another full scale IQ score in the evidence of record.  Dr. Molly Allen from River Park Psychiatric performed an IQ test on Plaintiff in October of 2005, approximately four months after the alleged onset date, and found a full scale IQ of 55.  Tr. 199.   The ALJ failed to even mention this score in his decision, although it is clear from the transcripts of the hearing that he knew about it. Tr. 42-43.  The Commissioner dismisses the ALJ's failure to discuss this score, because "[i]n order for an IQ score to be valid, there must be a narrative report indicating that the score was valid and consistent with the claimant's functioning . . . [h]ere, there was no narrative statement. Consequently, the score was not valid." Def.'s Brief (Doc. #15) at 13.  But, in a "close case on the ultimate issue of disability" (where Dr. Dipeolu's report on the one hand says that Plaintiff was not functioning in the range of her IQ score of 62 and that her test score was not exact because she was suffering from severe depression with psychotic features at the time of the test, then on the other hand states that Plaintiff's IQ score was somewhere

between 59 and 69), there is all the more reason for the ALJ to take steps to further develop the record.

As Plaintiff rightly points out, "[t]he Code of Federal Regulations places an affirmative duty on the ALJ to recontact a medical source 'when the report from [a] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.'" 20 C.F.R. 404.1512(e)(1). The full scale score of 55 clearly conflicts with Dr. Dipeolu's report and the ALJ's findings.[6]

Additionally, the court is concerned with the second part of the ALJ's mental retardation findings: functional abilities. The ALJ based most of his findings regarding Plaintiff's functional abilities on her own testimony. *See* Tr. 14.  In the decision, the ALJ cites to Plaintiff's self-reported abilities to cook, take care of herself and her child, have a driver's license, read the paper if the words are not too hard, and read the bible. *See* Tr. 14. However, a deeper reading of the record reveals that these activities are not entirely independent.  As the Commissioner points out: she required help while cooking and "her boyfriend made sure that the stove was turned off, because she forgot," and she did not drive because she became nervous on the highways.  Def.'s Brief (Doc. #15) at 6 (citing Tr. 34-35). Further, Plaintiff also testified that the thirteen year old daughter of her boyfriend "take

---

[6] It also conflicts with the ALJ's determination that Plaintiff did not meet Listing 12.05, where paragraph (B) instructs a finding of mental retardation with a full scale IQ score of 59 or less.

up more time with my son than me and my boyfriend does sometimes." Tr. 33.[7]   The Commissioner argues that the ALJ's determination of adaptive functioning is reasonable considering his reliance on the findings of Dr. Witt. Def.'s Brief (Doc. #15) at 10. The court notes that, while Dr. Witt found that Plaintiff has the social and intellectual skills for simple work, he also stated that she "does need support for independent living." Tr. 307. Oddly, when determining that Plaintiff did not meet the listing under 12.05 paragraph (C), the ALJ only pointed to Plaintiff's abilities for independent living. Tr. 14. Further, the ALJ specifically pointed to Plaintiff's "activities of daily living" as a basis for her RFC, just prior to stating that he was giving great weight to the opinion of Dr. Witt. Tr. 15.

Ultimately, the court has too many concerns with the determination made in this "close case." The ALJ, at least in part, relied on his belief that Plaintiff had not presented a valid full scale IQ score of 70 or less in determining Plaintiff's status. Considering Dr. Dipeolu's 95% belief that Plaintiff's score was between 59 and 69, and Dr. Allen's score of 55, the court finds that the ALJ failed to properly develop the record for a full and fair hearing. This failure precludes the court from determining "whether the ultimate decision on the merits is rational and supported by substantial evidence." *Welch*, 854 F.2d at 440.

## VI.   CONCLUSION

The Court has carefully and independently reviewed the record and concludes that,

---

[7] The ALJ responded by saying: "Well that's nice," but asked no follow-up questions about what that meant. *Id.*

for the reasons given above, the decision of the Commissioner is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.

A separate judgment will issue.

DONE this 7th day of March, 2011.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE